STATE USE HEMPSTEAD COUNTY *v.* ARKANSAS BANK & TRUST COMPANY.

Opinion delivered June 22, 1931.

*Carrigan & Monroe,* for appellant.

*W. S. Atkins* and *Lemley & Lemley,* for appellee.

BUTLER, J., (after stating the facts). The theory on which this suit was brought was that the Arkansas Bank & Trust Company became the depository by reason of an unlawful agreement entered into between it and the two banks above named to stifle competitive bidding for the county funds and to thus obtain its funds at a less rate of interest than the county could otherwise have obtained, and less than was reasonable and fair; and that, by this combination and agreement, the said banks became trustees to the extent of the funds received by them, the legal effect of which would be to make the claim of the county a preferred one and superior to that of the general depositors.

The facts are not in dispute. The banks involved in this suit, and others, perhaps, for several years had had an understanding by which only one of the banks should procure a certain account, and that the account when so procured should be divided in certain proportion among the other banks. It appears that several years ago competition for the deposit of public funds was keen, the rate of interest offered being sometimes as high as 5½ and 6½ per cent. but approximately ten years before the date of this suit it was realized that such competition and the rate of interest bid for public funds were unprofitable

and unwise. Hence the agreement, and in the early part of 1929, and before April 12th of that year, carrying out the general understanding which had obtained for a number of years, the three banks agreed that the Arkansas Bank & Trust Company should become the bidder for the county depository at the letting of the contract for such to be made on April 12th, and that the Arkansas Bank & Trust Company would carry with the other two banks in an equal amount approximately sixty per cent. of the funds it received and kept on deposit as county depository, it to be paid by the two other banks the same rate of interest which it paid the county, which in this case was three per cent. Pursuant to that agreement, the Arkansas Bank & Trust Company bid three per cent. interest on daily balances for the county and school funds, and on said date it was designated as county depository and executed the bond required by law in the sum of $145,000 with the Home Accident Insurance Company as surety thereon, guaranteeing to the county the faithful accounting and paying over on legal demand the moneys deposited in that bank by said county. To carry out its agreement with the other two banks, the Arkansas Bank & Trust Company, on April 20th, made deposits with the two other banks, each at the time executing to the Arkansas Bank & Trust Company a written guaranty, guaranteeing to the Arkansas Bank & Trust Company the prompt payment of all checks and orders that it might draw upon any deposit then made or any deposits thereafter made with interest at three per cent. per annum, figured on daily balances. The guaranty was a continuing one so long as the Arkansas Bank & Trust Company might deposit or have on deposit any amount to its credit in the other two banks. Provision was made for the cancellation of the guaranty upon notice and upon the payment in full of the amount of any deposits then on hand in said banks.

On January 6, 1930, the three banks entered into a written agreement for the handling in the future of certain named accounts; one, the collector's account; an-

other, the water and light account; and an account designated as the county treasurer's account, this being an account under which the county and school funds were held and handled. At that time, as shown by a notation at the head of the agreement, the Arkansas Bank & Trust Company had the county treasurer's account, which, under the terms of its contract with the county, would continue until April, 1931. That agreement, signed by each of the banks, is as follows:

"Hope, Arkansas, January 6, 1931.

"It is hereby mutually agreed among the three banks in Hope that the following bank accounts will change every two years:

"1. County collector's account each two years, about January. (The collector's account starting in January, 1931, at First National Bank and first savings will change about January, 1932.)

"2. County treasurer's account each two years, about April. (The county treasurer's account is let by bid by county court. The account is now in Arkansas Bank & Trust Company since April, 1929; will change about April, 1931.)

"3. Hope water and light account each two years, about July. (This account is now in the Arkansas Bank & Trust Company since July, 1928; will change about July, 1930.)

"It is understood and agreed that each bank make and pay for its own depository bond."

In all essential particulars the facts in the case at bar as outlined above are the same as in the case of *Taylor* v. *Whaley, ante* p. 598. This case is ruled by that. In the Whaley case the contention of the appellee, treasurer of Independence County, was that the money in the Citizens' Bank & Trust Company belonged to Independence County because there had been an unlawful agreement between that bank and the North Arkansas Bank of Batesville, which had been designated as the county depository, by which agreement said North Arkansas Bank became such depository, the alleged unlawful agreement

being in all respects the same as that in the instant case, *i.e.*, that they conspired together to submit only one bid and obtain the use of the public funds at a reduced rate of interest on daily balances in the name of the North Arkansas Bank and then divided the funds. The evidence in that case tended to establish the agreement, and the trial court so found and held that because of it the county funds which had been deposited by the North Arkansas Bank with the Citizens' Bank pursuant to that agreement never became the assets of the North Arkansas Bank, and that the Citizens' Bank was directly responsible to the appellee, as treasurer of Independence County, for said funds. In that decision the rule was recognized that a deposit of public funds in an incorporated bank constitutes a general deposit, and the relation of debtor and creditor obtains between the bank and the depositor; but that in cases where funds are acquired by the bank unlawfully and wrongfully, the depositor would be entitled to recover same in preference to the general creditors of the bank. We held, however, that this rule of preference was abrogated by act No. 107 of the acts of the General Assembly of 1927 providing for the distribution of the entire assets of an insolvent State bank.

The appellant, in the case at bar, contends that, while the facts here are similar to those of the Whaley case, yet there are vital points of difference which distinguish the two. The alleged points of difference are: (1) that, in the instant case, the testimony established an express agreement, while in the Whaley case there was only a tacit understanding between the banks to stifle bidding followed by a later division of the funds between them; (2) that there was a solemn written and signed agreement executed between the three banks in the case at bar, under the terms of which the funds were divided among themselves and the defendants, Citizens' National Bank and First National Bank, received and held their portions of said funds; (3) that there were separate written bonds executed by the Citizens' National Bank

and First National Bank to the Arkansas Bank & Trust Company for the faithful handling of these funds.

The first point of difference urged is wholly immaterial, for it matters not in what way the fact of the agreement complained of was established, so long as the evidence adduced established its existence and that it was acted upon. In both cases the evidence established the agreement beyond question and the similar action of the banks in the instant case and those involved in the Whaley case.

The second point of difference urged does not exist. The written agreement signed by the banks in the instant case was entered into after the alleged unlawful agreement complained of and after the banks had proceeded thereunder, and the agreement referred only to the relation of the banks to each other and their dealings with the public funds in the future. It recognized that the Arkansas Bank & Trust Company had the county funds and would retain them until April, 1931, and the agreement related to the disposition of those funds after said date.

On the third alleged point of difference there is none. It was not deemed necessary to recite in the statement of facts in the Whaley case the giving by the Citizens' Bank & Trust Company of a bond to the North Arkansas Bank guaranteeing payment to the latter bank of the funds deposited by it in the former, but there was such a bond, the effect of which we considered in deciding the Whaley case.

The position is taken by the appellant that the bonds made by the Citizens' National Bank and the First National Bank to the Arkansas Bank & Trust Company, the written agreement of January 6, 1930, together with the manner in which the Arkansas Bank & Trust Company's account was carried on the books of the other two banks established an express written trust within the meaning of act No. 107, *supra*. We do not agree with this contention: first, because the only written agreement signed by the Arkansas Bank & Trust Company, as we have

seen, is referable only to the future handling of the county funds and does not relate to the agreement under which the Arkansas Bank & Trust Company was designated as the county depository; and, second, because the agreement was not with the county, and to be an express trust within the meaning of the act the agreement must be between the trustee and the *cestui que trust,* signed by the trustee at the time the contract for the deposit of the funds was made. "Express trusts are thus created by the direct and positive act of the parties manifested by some instrument in writing, whether by deed, will or otherwise." *U. S. Fidelity & Guar. Co.* v. *Smith,* 103 Ark. 145, 147 S. W. 54.

Act No. 107 of the Acts of 1927, which controlled our decision in the case of *Taylor* v. *Whaley, supra,* and which must control in the instant case, by § 1 provides: "All creditors of a bank of which the commissioner has taken charge are classifiable either as secured creditors, prior creditors, or general creditors." Continuing, that section defines "prior creditors," one definition of which, and the one relied on by the appellant, is as follows: "(5) The beneficiary of an express trust, as distinguished from a constructive trust, a resulting trust, or a trust *ex maleficio,* of which said bank was the trustee, and which was evidenced by writing signed by said bank at the time thereof." After defining certain other prior creditors, the section further provides that "all creditors not in this section hereinabove classed as secured or prior creditors of said bank, including the State of Arkansas, and any of its subdivisions, shall be general creditors thereof."

It is suggested that, in our construction of subdivision (5) of § 1 of act 107, *supra,* in the case of *Taylor* v. *Whaley,* we overlooked or ignored the words in said section "of which the said bank was trustee." We neither overlooked nor ignored these words, but considered them in connection with the entire subdivision, giving to the same what we conceived to be its ordinary and common sense meaning. In fact, we were unable to see any ob-

scurity or ambiguity in that subdivision, and are of the opinion that the intention is so clearly expressed as to require no construction. The subdivision might have omitted the words, "as distinguished from a constructive trust, a resulting trust, or a trust *ex maleficio* of which said bank was the trustee," in which event the statute would have read: "The beneficiary of an express trust which was evidenced by a writing signed by said bank at the time thereof." But the inclusion of the words which we say might have been omitted was merely to, and did, emphasize that no trust should be the basis of a preferred claim except an express trust. We think the legislative intent clear, and the reasons for the limitation named in the act sound. Experience has shown that the rights of general depositors are often impaired in failing or insolvent banking institutions by reason of preferences given to favored depositors which the act in question sought to cure and which could not reasonably have been anticipated to work harm to the State, or its agencies, in respect to their funds on deposit in such institutions, as the policy of the law was to protect said funds by bonds executed by depository banks securing the payment of public funds on demand. The unfortunate situation in this case, as in many others that have recently arisen, is that the bonds taken to secure the public funds on deposit have proved insufficient.

As in the Whaley case, we have failed to state a number of facts surrounding the agreement entered into between the three banks because it is unnecessary for us to decide whether the agreement and the action of the banks thereunder was lawful or unlawful; if unlawful, no trust in the moneys received by the banks could arise except a trust *ex maleficio,* which is not such a trust as under the statute would create a preference. We reaffirm the doctrine announced in *Taylor* v. *Whaley, supra;* and, as that doctrine is controlling in the instant case, the decree of the learned special chancellor is correct, and it is therefore affirmed.

Mr. Justice MEHAFFY dissents.